UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| BRIAN SKUBINNA,<br><br>                    Plaintiff,<br><br>     v.<br><br>CAROLYN W. COLVIN, Acting Commissioner of Social Security,<br><br>                    Defendant. | Case No. 3:12-cv-06044-KLS<br><br>ORDER AFFIRMING DEFENDANT'S DECISION TO DENY BENEFITS |

Plaintiff has brought this matter for judicial review of defendant's denial of his applications for disability insurance and supplemental security income ("SSI") benefits. Pursuant to 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73 and Local Rule MJR 13, the parties have consented to have this matter heard by the undersigned Magistrate Judge. After reviewing the parties' briefs and the remaining record, the Court hereby finds that for the reasons set forth below, defendant's decision to deny benefits should be affirmed.

FACTUAL AND PROCEDURAL HISTORY

On June 20, 2009, plaintiff filed an application for SSI benefits, and on July 10, 2009, he filed another one for disability insurance benefits, alleging disability as of September 1, 2004, due to spinal impairments, depression and a cognitive disorder. See ECF #10, Administrative Record ("AR") 17, 182. Both applications were denied upon initial administrative review on September 24, 2009, and on reconsideration on February 10, 2010. See AR 17. A hearing was held before an administrative law judge ("ALJ") on March 10, 2011, at which plaintiff,

ORDER - 1

represented by counsel, appeared and testified, as did a vocational expert. See AR 34-82.

In a decision dated May 6, 2011, the ALJ determined plaintiff to be not disabled. See AR 17-28.  Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on October 17, 2012, making the ALJ's decision the final decision of the Commissioner of Social Security (the "Commissioner").  See AR 1; 20 C.F.R. § 404.981, § 416.1481.  On December 18, 2012, plaintiff filed a complaint in this Court seeking judicial review of the Commissioner's decision. See ECF #3.  The administrative record was filed with the Court on April 8, 2013. See ECF #10.  The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the Commissioner's final decision should be reversed and remanded for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; and (2) in discounting plaintiff's credibility.  For the reasons set forth below, however, the Court disagrees that the ALJ erred in determining plaintiff to be not disabled, and therefore finds that defendant's decision to deny benefits should be affirmed.

## DISCUSSION

The determination of the Commissioner that a claimant is not disabled must be upheld by the Court, if the "proper legal standards" have been applied by the Commissioner, and the "substantial evidence in the record as a whole supports" that determination. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986); see also Batson v. Commissioner of Social Security Admin., 359 F.3d 1190, 1193 (9th Cir. 2004); Carr v. Sullivan, 772 F.Supp. 522, 525 (E.D. Wash. 1991) ("A decision supported by substantial evidence will, nevertheless, be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.") (citing Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987)).

ORDER - 2

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); see also Batson, 359 F.3d at 1193 ("[T]he Commissioner's findings are upheld if supported by inferences reasonably drawn from the record."). "The substantial evidence test requires that the reviewing court determine" whether the Commissioner's decision is "supported by more than a scintilla of evidence, although less than a preponderance of the evidence is required." Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975). "If the evidence admits of more than one rational interpretation," the Commissioner's decision must be upheld. Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984) ("Where there is conflicting evidence sufficient to support either outcome, we must affirm the decision actually made.") (quoting Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971)). [1]

I. The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining

---

[1] As the Ninth Circuit has further explained:

> . . . It is immaterial that the evidence in a case would permit a different conclusion than that which the [Commissioner] reached. If the [Commissioner]'s findings are supported by substantial evidence, the courts are required to accept them. It is the function of the [Commissioner], and not the court's to resolve conflicts in the evidence. While the court may not try the case de novo, neither may it abdicate its traditional function of review. It must scrutinize the record as a whole to determine whether the [Commissioner]'s conclusions are rational. If they are . . . they must be upheld.

Sorenson, 514 F.2d at 1119 n.10.

ORDER - 3

whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v.

ORDER - 4

Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

Plaintiff challenges the ALJ's evaluation of the opinions of Lynn L. Staker, M.D., which reads in relevant part:

> . . . In 2008, orthopedic surgeon Dr. Staker evaluated the claimant for purposes of determining his eligibility for state benefits. (Ex. 7F/15) Based on a prior CAT scan, Dr. Staker diagnosed status post lumbar problems, as would be expected following his [September 2004 motor vehicle] accident. In September of 2008, Dr. Staker opined that the claimant was limited to sedentary work with restrictions in bending, handling, and stooping.
>
> In April of 2009, Dr. Staker conducted a reassessment he noted that the claimant had received no treatment since his prior visit and the claimant reported that his lower back pain was worse. (Ex. 7F/5) Dr. Staker ordered an MRI and diagnosed new problems with the cervical spine and moderate degenerative disk disease of the cervical and lumbar spine based on previous x-rays that would restrict bending, crouching, stooping and lifting (without specifying how much) and found a restriction to sedentary work. He recommended conservative treatment. Dr. Staker also recommended an EMG study done, which was performed by Dr. [Kari K.] Heber. It showed no evidence of neurological problems. (Ex. 6F) Dr. Staker recommended a three-month course of physical therapy.
>
> . . .
>
> . . . I give Dr. Staker's opinion that the claimant is restricted to sedentary work little weight. Dr. Staker provided no reason given [sic] for this limitation. Moreover, it is inconsistent with the claimant's lack of treatment, failure to use pain medication, and reports of only intermittent pain to Dr. [Mark C.] Hoffman. As Dr. Staker provided no rationale or explanation for his assessment, I infer that he based his opinion on the claimant's reports. As set forth below, the claimant is not credible and therefore, I reject any assessment that relied on the claimant's reports.

ORDER - 5

AR 22-23.  Specifically, plaintiff argues these are not legally sufficient reasons for rejecting Dr. Staker's limitation to sedentary work.  The Court disagrees.

Plaintiff asserts Dr. Staker's contemporaneous examination notes provide the necessary rationale for the limitation to sedentary work.  But those examination notes contain very little in the way of objective clinical findings that would *explain* the assessed limitation.  See AR 383-84, 392-93.  As such, the ALJ did not err in rejecting that limitation on this basis.  See Batson, 359 F.3d at 1195 (ALJ need not accept opinion of treating physician if it is inadequately supported by clinical findings).  For the same reason – and because as discussed in greater detail below, the ALJ did not err in discounting plaintiff's credibility – the ALJ also properly inferred that Dr. Staker relied on plaintiff's own self reporting in so opining.  See Tonapetyan, 242 F.3d at 1149 (ALJ may disregard medical opinion premised on claimant's complaints where record supports ALJ in discounting claimant's credibility); Morgan, 169 F.3d at 601.[2]

Plaintiff also takes issue with the ALJ's statement that Dr. Staker's assessed limitation is inconsistent with his lack of treatment, asserting that the ALJ did not consider the explanation he

---

[2] Plaintiff further asserts that Dr. Hoffman "reviewed Dr. Staker's opinion and offered no disagreement with the assessment." ECF #13, p. 7 (citing AR 411). The only comments Dr. Hoffman made in that regard, however, are as follows:

> . . . [Plaintiff] was sent to Dr. Staker.  He was found to have significant cervical and lumbar disk disease with normal nerve conduction studies.  Dr. Staker who has recommended further treatment with physical therapy, consideration for injections could not be ruled out, but does not believe that he is at maximum benefit at this point.  MRI, included in the note, shows significant spinal stenosis, but again, nerve conduction studies were normal. . . .
>
> . . .
>
> . . . As per Dr. Staker's note and I would agree that at some point if [the] patient develops increased radicular symptoms that steroid injections may be beneficial, but will hold off on those for now.

AR 411-12. In other words, Dr. Hoffman gave no indication that he was aware of or agreed with the limitation to sedentary work Dr. Staker assessed in separate evaluation reports, nor – because Dr. Hoffman discussed the above aspects of Dr. Staker's findings, but specifically not her opinion regarding ability to work, which again are contained in separate evaluation reports – is it reasonable to infer that the lack of mention thereof in Dr. Hoffman's treatment note amounts to a silent agreement therewith.

ORDER - 6

offered at the hearing for the lack thereof, namely that "he had learned to live with the pain and only sought care when it worsened," and that "he did not have a lot of treatment because he simply was not doing much." ECF #13, p. 8 (citing AR 46-47). But the ALJ's later discussion of plaintiff's testimony indicates he did consider it, but found the overall weight of the medical and other evidence in the record was more reliable.[3] See AR 25-26. Further, that evidence – including some of Dr. Staker's own progress notes – supports the ALJ in regard to the lack of treatment and self-reports of only intermittent pain, which in turn constitute valid reasons for rejecting Dr. Staker's assessed limitation. See AR 383, 411, 509, 519, 548, 562, 567-69; Magallanes, 881 F.2d at 754 (finding ALJ properly rejected physician's opinion in part on basis that it conflicted with plaintiff's own subjective pain complaints).

Plaintiff challenges as well on the ALJ's reliance on an initial functional assessment provided by a state agency non-medical source, which later was affirmed by Robert Hoskins, M.D., a non-examining, consultative physician:

> The physical residual capacity assessment assessed by the State agency decision maker, that was affirmed by Dr. Hoskins on February 5, 2010, found exertional limitations consistent with "light" duty work. Specifically, Dr. Hoskins found that the claimant was able to lift 20 pounds occasionally and 10 pounds frequently and stand and/or walk and sit about 6 hours each in an 8-hour workday, with normal breaks. In addition, he could occasionally climb, stoop, kneel, crouch, and crawl. He needs to avoid vibration and hazards. (Exs. 10F and 17F) I give this assessment significant weight as it is

---

[3] In relying on his hearing testimony – and on one other self-report he provided in late July 2010, in relation to his completion of a chemical dependency program (see AR 533) – plaintiff asserts he limited his level of activity and use of pain medications so as to avoid exacerbating his symptoms, arguing the language of Social Security Ruling ("SSR") 85-15 supports him here. As plaintiff himself admits, however, that ruling clearly concerns the evaluation of mental health impairments with respect to the ability to handle stress by adopting "a highly restricted and/or inflexible lifestyle," and accordingly the Court declines to expand it to the realm of physical pain. Id., 1985 WL 56857 at *6. Nowhere else in the record, furthermore, does it appear that plaintiff informed his treatment or other medical providers of this, even though as noted below the weight of the evidence contained therein indicates an overall lack of treatment and self-reports of only intermittent pain on his part. Plaintiff's testimony regarding limitation of activity due to fear of exacerbating his symptoms also is called into question by another self-report he made just prior thereto in late May 2010, in which he stated that he was "thinking about working odd jobs for people to make extra money" and that he had "already gotten an offer to paint a house." AR 525.

ORDER - 7

>consistent with the treatment record, which shows only intermittent reports of back pain and little use of pain medication for back pain.

AR 23. Specifically, plaintiff faults the ALJ for giving greater weight to the opinion of a state agency decision maker, than he did to that of Dr. Staker. The Court, however, finds no error on the part of the ALJ here. First, as discussed above, the ALJ gave several other valid reasons for rejecting Dr. Staker's limitation to sedentary work. Second, the ALJ did not give greater weight to the opinion of the state agency decision maker, but rather to that of Dr. Hoskins, a non-examining consultative physician. In addition, while plaintiff labels Dr. Hoskins's statement that he was affirming the state agency as "generic", he makes no showing that any greater statement was required here. ECF #13, p. 10. Lastly, Dr. Hoskins did not merely rely on the same evidence that Dr. Staker did, but noted other independent evidence in the record he felt to be indicative of a less restrictive functional assessment. See AR 420, 512.

II.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the

ORDER - 8

claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834.  The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

The ALJ in this case discounted plaintiff's credibility in part because:

> . . . Although the alleged disability onset date is 2004, there is little medical evidence of record predating 2008.  In 2006, the State of Washington found that [plaintiff] was not eligible for state medical benefits because of insufficient information and because he failed to attend both his physical and psychiatric evaluations.  (Ex. 3F/6)  The next evidence of record is in 2008.  In other words, there is no medical evidence of record to support a disability claim from 2004 until 2008.

AR 22.  Inconsistency between the objective medical evidence in the record and a claimant's subjective complaints can satisfy the clear and convincing requirement. See Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).  In addition to the absence of any medical evidence for the first four years following plaintiff's alleged onset date of disability, the ALJ also noted the inconsistency between the objective medical evidence that *is* contained in the record and plaintiff's allegations of disabling symptoms and limitations. See AR 22-26.  Given that as discussed above the ALJ did not err in evaluating that evidence, this constitutes a valid basis for discounting plaintiff's credibility as well.

The ALJ also noted the inconsistencies in both plaintiff's testimony and his self-reporting

ORDER - 9

to treatment providers and other medical sources concerning his drug use. See AR 24. Plaintiff asserts there is no evidence he engaged in drug seeking behavior. But the ALJ did not state that he found evidence of drug seeking behavior, but rather that plaintiff had not been entirely honest in reporting the nature and extent of his drug use. In this regard, the substantial evidence in the record supports the ALJ. For example, examining psychologist Dan Neims, Psy.D., specifically noted in relevant part as follows:

> [Plaintiff was] directly asked 2x's if he had [a history of] [alcohol] abuse, methaph/amphetamine abuse, other drug use, or hx I.V. drugs. [Plaintiff] vehemently + directly denied this.
>
> Background data [from examining psychologist Michael] Corpolongo[, Ph.D.,] (7/9/08) directly contradicts . . .
>
> This signific[ant] discrepancy suggests need for UA + backgr[ound] records. I am unable to determine credibility of [plaintiff's] statement this date.

AR 364; see also AR 365 ("not forthcoming re: drug hx"). In an evaluation report provided by the Cascade Outpatient Chemical Dependency Recovery Program it was noted that plaintiff "initially minimized his use of marijuana," but then "did eventually disclose that he was less than honest when disclosing the frequency of his use." AR 401.[4] Thus, for this reason too the ALJ did not err in discounting plaintiff's credibility. See Smolen, 80 F.3d at 1284 (ALJ may consider "ordinary techniques of credibility evaluation," such as prior inconsistent statements and other testimony that "appears less than candid").

The ALJ further discounted plaintiff's credibility for the following reasons:

> His testimony regarding his limitations is inconsistent with reports in the

---

[4] See also AR 402-03 (further noting that "[w]hen asked to disclose his last use of marijuana he was vague and unable to specify a general date," but that "[w]hen confronted he hesitated and eventually disclosed that he uses marijuana two times per week," and that it was "virtually impossible to validate the accuracy of his self-report," although "a drug test administered at the time of the evaluation was positive for THC"); 404 (noting as well that plaintiff "was less than candid about disclosing his current use of marijuana," and was at "high risk for continued use as evidence by his attempt to minimize the extent of his use").

ORDER - 10

> medical records and, therefore, not credible.  He reported to Dr. Hoffman that he experiences only intermittent problems with his back, but testified that his activities are severely circumscribed by pain.  Although he appears to have stopped taking his pain medication on a regular basis, he is using marijuana for his back pain and admits that he has not reported this to his physician.  He rarely sees Dr. Hoffman, which is not consistent with the degree of pain he claims to experience.  The only specialist he has seen is Dr. Starker [sic], not a treating source, who recommended a conservative course of treatment with physical therapy and injections.  He tried a relatively short course of physical therapy in 2009, which he did not continue even though it was successful in relieving his back symptoms.  In fact, he misrepresented his work restrictions and treatment options to the [Washington State] Division of Vocational Rehabilitation [("DVR")] as he reported that Dr. Staker restricted him to light duty work for 2 ½ hours a day.  (Ex. 15E/36)  Undoubtedly, the claimant has back pain, but there is insufficient persuasive evidence that it is as intense as he claimed at the hearing.
>
> Similarly, contrary to his testimony at the hearing, the claimant has consistently reported improvement in his mental health with medication.  However, he testified that the medication helps with the manic phase of his illness, but not the depression.  He has not reported this to Dr. Hoffman or anyone at Kitsap Mental Health.

AR 25-26.  These are all valid reasons for finding plaintiff to be not fully credible.[5]  Although plaintiff attempts to justify his lack of greater treatment by arguing he self-limited his activities and restricted the pain medication he took to avoid overexertion and increased pain, the Court has already found that argument to be without merit as discussed above.  Further, while it is true that Dr. Staker told him she did not think "there was any *specific* curative treatment," at the same time she told him he "should continue to receive conservative treatment." AR 383-84 (emphasis added).  Nor does plaintiff challenge the other stated reasons for finding him to be not entirely

---

[5] See Smolen, 80 F.3d at 1284; see also Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (upholding ALJ in discounting credibility due to lack of consistent treatment, noting fact that claimant's pain was not sufficiently severe to motivate her to seek treatment, even if she had sought some treatment, was powerful evidence regarding extent to which she was in pain); Meanal v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ properly considered failure to prescribe and failure to request serious medical treatment for supposedly excruciating pain); Morgan, 169 F.3d at 599 (ALJ may discount credibility on basis of medical improvement); Johnson v. Shalala, 60 F.3d 1428, 1434 (9th Cir. 1995) (ALJ properly found prescription for conservative treatment only to be suggestive of lower level of pain and functional limitation); Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989) (failure to assert good reason for not seeking or following prescribed course of treatment, or finding that proffered reason is not believable, "can cast doubt on the sincerity of the claimant's pain testimony").

ORDER - 11

credible, such as the improvement he experienced, his failure to continue with physical therapy despite its efficacy and his misrepresentation to DVR regarding the work restrictions Dr. Staker imposed on him.[6]

Lastly, the ALJ found it "significant that, after being advised that he was considered eligible for employment" by DVR, plaintiff "broke off contact with" that agency, that plaintiff "quit attending appointments," and that DVR's "attempts to contact him were unsuccessful." AR 26. This, the ALJ stated, was "a strong indication that" plaintiff "was not interested in obtaining employment when encouraged to do so and supported in finding suitable work." Id. Plaintiff argues the ALJ erred in relying on this basis for finding he lacked credibility, because no effort was made to determine why he stopped attending DVR appointments. The Court disagrees. It is true that the ALJ has a duty to fully and fairly develop the record, but that duty is triggered only where the evidence is ambiguous or the ALJ finds "the record is inadequate to allow for proper evaluation of the evidence." Tonapetyan, 242 F.3d at 1150 (citation omitted). Neither is the case here, as the ALJ did not find the record to be inadequate, and the absence of any valid reason for not attending DVR appointments in the evidence is not ambiguous, but rather highlights the fact that the record does not support plaintiff here.

Accordingly, while it also may be true that not all of the reasons the ALJ gave for finding plaintiff to be not fully credible – such as his ability to walk to the hearing and criminal history[7]

---

[6] See Carmickle v. Commissioner of Social Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (issue not argued with specificity in briefing will not be addressed); Paladin Associates., Inc. v. Montana Power Co., 328 F.3d 1145, 1164 (9th Cir. 2003) (by failing to make argument in opening brief, objection to district court's grant of summary judgment was waived); Kim v. Kang, 154 F.3d 996, 1000 (9th Cir.1998) (matters on appeal not specifically and distinctly argued in opening brief ordinarily will not be considered).

[7] Defendant is correct that plaintiff's criminal history does involve certain crimes such as theft and forgery that can be said to involve dishonesty, and therefore normally would reflect poorly on his credibility. See AR 287. But the ALJ did not discount plaintiff's credibility on this basis. Rather, he found the fact that most of the crimes plaintiff committed occurred after his alleged onset date of disability indicated "his mental and physical impairments do not significantly restrict his ability to engage in criminal activity." AR 24. The record, however, contains insufficient

ORDER - 12

– the fact that some of the reasons for discounting his subjective complaints were improper does not render the ALJ's credibility determination invalid, as it is supported by substantial evidence in the record. Tonapetyan, 242 F.3d at 1148.

## CONCLUSION

Based on the foregoing discussion, the Court hereby finds the ALJ properly concluded plaintiff was not disabled. Accordingly, defendant's decision to deny benefits is AFFIRMED.

DATED this 7th day of March, 2014.

Karen L. Strombom
United States Magistrate Judge

---

evidence as to how participation in those crimes indicated an ability to perform work-related activities. See Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007) (claimant's daily activities may "form the basis of adverse credibility determination," if they "meet the threshold for transferable work skills"); Smolen, 80 F.3d at 1284 (claimant's testimony may be rejected if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting").

ORDER - 13